Filed 8/3/22  P. v. Cox CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B314658 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA368517) |
| v. | |
| ALLEN COX, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed.

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Allen Cox (defendant) appeals from the amended judgment entered after the trial court substituted a firearm enhancement in place of one requiring a longer period of incarceration on one of the attempted murder counts but not the other.  Defendant contends that the trial court abused its discretion by failing to properly consider his young age at the time his crimes were committed.  We conclude that defendant failed to meet his burden of demonstrating an abuse of discretion.  Accordingly, we affirm the judgment.

## BACKGROUND

**Prior proceedings**

Defendant and two codefendants were charged with two counts of attempted murder, counts 1 and 6, and other felony counts after firing weapons toward several people in 2010, hitting one of them in the knee.  Defendant and codefendant Getz Anderson were tried together in 2011.  The jury found defendant guilty of possession of a firearm by a felon (count 3), found Anderson guilty of possession of an assault weapon (count 4), and found true the gang allegation pursuant to Penal Code[1] section 186.22 subdivision (b), as to both counts.  The jury was unable to reach verdicts on the remaining counts.  A mistrial was declared, count 2 (a violation of Veh. Code, § 10851, subd. (a)) was dismissed, and a retrial on counts 1, 5, and 6 (which the court renumbered counts 1, 2, and 3 on the verdict forms) was ordered.[2]

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     To avoid confusion, we will refer to renumbered counts 2 and 3 by referring first to the original number followed by the retrial number in parentheses as follows:  count 5(2) and count

2

At retrial in 2013, defendants were convicted of the attempted murder of Steve Farias (count 1), and of "John Doe" (count 6(3)) in violation of sections 664 and 187, subdivision (a), and of shooting at an inhabited dwelling in violation of section 246 (count 5(2)).  With regard to counts 1 and 6(3), the jury found true the special allegations that a principal personally used a firearm within the meaning of section 12022.53, subdivisions (b), (c) and (e); and as to all three counts, the jury found true the allegation that the offenses were committed for the benefit of, at the direction of, or in association with a criminal street gang, as alleged under section 186.22, subdivision (b).  The jury found that the attempted murders were committed willfully, deliberately and with premeditation within the meaning of section 664, subdivision (a); that a principal, personally and intentionally discharged a firearm, which proximately caused great bodily injury within the meaning of section 12022.53, subdivisions (d) and (e)(1); and that a principal personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivisions (c) and (e)(1).

Defendant was sentenced in September 2013 to two consecutive life terms in prison for the attempted murders, plus a consecutive firearm enhancements of 25 years to life, with the remaining firearm enhancements stayed.  As to count 5(2), shooting at an inhabited dwelling, the court imposed a term of 15 years to life and stayed the term under section 654.  For original count 3, felon in possession of a firearm, the court imposed the high term of three years plus a gang enhancement of four years

---

6(3).  As the original count 3, possession of a firearm by a felon was not renumbered, we refer to it as original count 3.

to run concurrently with the terms imposed for the attempted murder counts.

After we affirmed the judgment the California Supreme Court granted review and in 2019 transferred the matter back to this court with instructions to vacate our prior decision and reconsider the cause in light of *People v. Canizales* (2019) 7 Cal.5th 591. After reconsideration, we again affirmed the judgment, but remanded to give the trial court the opportunity to exercise discretion whether to strike firearm enhancements imposed under section 12022.53. (See *People v. Anderson* (Dec. 12, 2019, B251527) [nonpub. opn.].) Section 12022.53, subdivision (h) had recently been amended to give the trial court such discretion in the interest of justice pursuant to section 1385. (See Stats. 2017, ch. 682, § 2.)

**Current proceedings**

On remand the trial court appointed defense counsel, who filed a motion to strike the firearm enhancements. The motion suggested mitigating factors based upon defendant's age at the time of the crimes (21 years), his traumatic childhood, his supportive family, his relationship with his two children, and his progress toward rehabilitation. Attached as exhibits were certificates of completion for a 2020 anger management course; high school equivalency in 2017; a 12-week story-telling program in 2019; and evidence of participation in adult education, mental health coping skills, and GED classes. The motion was heard by the same judge who had presided over defendant's retrial.

Defendant testified at the hearing on the motion as follows:

> "I would just like to ask the court if they could take into consideration before making its decision today that I take responsibility for my actions. I was young. I was careless. I didn't understand the

4

impact and magnitude of the damage I was causing the victim, my community, my family, my daughters, and myself.

"And as I was into my prison sentence, six years into it, I began to grow and productively rehabilitate myself. I've taken numerous self-help groups. I passed the G.E.D. I'm currently involved in criminal gang anonymous groups. I'm no longer involved or belong to any gang. I'm in the process of being certified as a welder. I'm continuing to pay my restitution through my maintenance mechanic job that I have.

"I went from a level 4 prison to on my way to a level 2 prison in December.

"And, you know, this is my first time in prison. I have given over 11 years of my life for my wrongdoing, and all I'm just asking for the court is if I can just get another chance at becoming a productive citizen."

The trial court declined to strike the firearm enhancements. Instead, the court resentenced defendant on the enhancements in count 6(3) by imposing one 10-year enhancement pursuant to section 12022.53, subdivision (b) in place of the 25-year enhancement previously imposed pursuant to subdivisions (d) and (e)(1). The court explained its ruling as follows:

"I gave a lot of thought to this, and largely I'm leaning with the prosecutor. I'm going to bring out some more facts.

"First of all, at the time of this shooting incident the defendant had already been convicted twice of felonies. In 2007 he was convicted of I

5

believe possession of drugs for sale. In 2008 he was convicted of felon with a firearm.

"He made some very telling comments both during the shooting itself and after the shooting. During the shooting, he went over and—let me just see—he yelled, 'Fuck these fools.' So there's no doubt that this was a heartless, callow attack on an unarmed young man.

"By the way, just to set the scene, there were five people sitting in a backyard, they were just sitting there in the backyard, and Mr. Cox and Mr. Anderson drove by the place once, then parked nearby. They ran up, and they just started shooting at these people. [¶] [T]he people in the backyard were not gang members. They were just young men, and they shot at them.

"[T]he good news is that Cox and Anderson were not good shots, and that Anderson's gun jammed. Anderson had sort of like an Uzi-type gun that jammed, because based on the testimony at trial, the bullets or something he was using were not made for that kind of gun. [¶] And Cox, . . . at least from what I was able to confirm, he at least fired four times and hit one person in the leg. [¶] All these people ran for cover, and, as I said, it was just, I believe, luck that they didn't get hit.

"While [Cox and Anderson are] having a private conversation, as [the prosecutor] indicated, they put them in a jail cell together, . . . and they recorded it. And Cox made another statement, and he was sort of telling—Cox described how he saw Anderson attempt to shoot the motherfuckers.

"So there's nothing mitigating about the underlying facts of this case. You basically have

6

predators hunting people with high-powered weaponry for no reason other than, I believe, they were in a rival gang area. So they thought that they were going to get some kind of glory by shooting people in a rival gang area.

"And 21 years, 4 months, I mean, I'm just not convinced by that argument that he's not old enough to be responsible for his conduct.

"Also, this whole thing about the gang thing, while it has a nice ring to it that if you grow up in a neighborhood where you don't have as many chances you end up in a gang, it certainly doesn't follow that if you end up in a gang that you're going to shoot people, unarmed, with high-powered weaponry for no other reason than they're sitting in their backyard.

"So all of that goes against Mr. Cox. [¶] . . . [¶]

". . . And the other, I guess, thing that I considered is, while he had some record in the prison and there's some mitigation based on that, it's not like the greatest record I've seen in terms of people that, you know, what they can do in prison, but it's certainly a good start.

"Anyway, what I was originally going to do and what I had written as my original decision, and the mitigating factors as detailed by the defense—his age, lack of judgment, his bad childhood—and then weigh the underlying facts of the cause of the case, his underlying criminal history, the court would find it very difficult to find it would be in the interest of justice to strike the gun enhancements in this case. I fully recognize the discretion I have and I have chosen not to exercise it for the reasons given."

7

On July 14, 2021, the trial court dismissed from count 6(3) the section 12022.53, subdivisions (d) and (e)(1) allegation,  and imposed an enhancement of 10 years pursuant to section 12022.53, subdivisions (b) and (e), making the sentence on count 6(3) life in prison plus 10 years.  The court explained:  ". . . I do want to recognize that people can change.  I saw the documents submitted by defense counsel.  I do believe he's legitimately making efforts to change himself."  All other terms of the sentence remained as previously entered.

Defendant filed a timely notice of appeal from the judgment.

## DISCUSSION

Section 12022.53, subdivision (h) was amended effective January 1, 2018, to provide:  "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section.  The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law."  (Stats. 2017, ch. 682, § 2.)

Defendant contends that the trial court abused its discretion by denying that being 21 years old at the time of the crime is a mitigating factor.[3]  Defendant recognizes that he bears

---

[3]     As amended effective March 14, 2022, California Rules of Court, rule 4.423(b)(6) states the following mitigating factor: "The defendant is under 26 years of age, or was under 26 years of age at the time of the commission of the offense."  At the time that defendant's motion to strike the firearm enhancements was heard and now, factors in mitigation have also included circumstances that "reasonably relate to the defendant or the

8

the burden to demonstrate an abuse of discretion and to do so, he must " 'clearly show that the sentencing decision was irrational or arbitrary.' (*People v. Carmony* (2004) 33 Cal.4th 36[7], 376.)" Defendant argues that that the trial court refused to recognize or agree that a 21-year-old offender could be as immature as an 18-year-old and thus was unaware of the scope of its discretion in this regard.

"When being sentenced, a defendant is entitled to decisions made by a court exercising informed discretion. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) A court acting while unaware of the scope of its discretion is understood to have abused it. (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)" (*People v. Tirado* (2022) 12 Cal.5th 688, 694.)

We agree with respondent that the trial court was aware of the scope of its discretion in considering defendant's age as a mitigating factor. The court stated that it had read all defense documents. Defendant's written arguments included references to scientific papers regarding brain development and criminal behavior. In addition the court heard defense counsel's argument that the studies show the brain is not fully developed until age 25, and the Legislature had provided a beneficial consideration for parole for those under 25.

The trial court indicated that it had given this case a lot of thought and considered youth as a mitigating factor, but found it harder to give a special benefit to a person aged 21 years four months at the time of the crimes than to a person of 18 years and younger, given that people serve in the military and do all kinds

---

circumstances under which the crime was committed." (Rule 4.423(c).)

of amazing things at the age of 21. The court later indicated that it had prepared a decision refusing to strike the enhancements altogether after considering the mitigating factors detailed by the defense, including defendant's age, lack of judgment, his bad childhood, and weighing them against the underlying facts of defendant's case and his two prior felony criminal history. The court noted the more egregious facts of the case: five people who were not gang members were sitting in a backyard when defendant and Anderson drove by, parked, ran up and started shooting; and later in a recorded jailhouse conversation, defendant described how he saw Anderson trying to shoot the "motherfuckers." The court referred to defendant and Anderson as "predators hunting people with high-powered weaponry for no reason than . . . they were in a rival gang area."

The court's comments disclose that it recognized defendant's age as a possible mitigating factor. The court found in effect that it was outweighed by defendant's "commit[ing] to killing people for no other reason than they were in a different neighborhood and might be rival gang members," shooting people in their backyard because they were different. "'Sentencing courts have wide discretion in weighing aggravating and mitigating factors [citations], and may balance them against each other in "qualitative as well as quantitative terms" [citation] . . . . We must affirm unless there is a clear showing the sentence choice was arbitrary or irrational.'" (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.)

It is not irrational to differentiate between the culpability of a 17-year-old and someone 21 years old. (See *People v. Hoyt* (2020) 8 Cal.5th 892, 953 [prosecutor's argument to jury at penalty phase not to consider age was not misconduct].) And

10

defendant failed to show the trial court's weighing of this factor was irrational in this instance.  Defendant has pointed to no evidence of his immaturity, nor presented a professional evaluation of his maturity, mental or emotional capacity.  We thus cannot conclude that giving less weight to defendant's age than the facts of the crime was an abuse of discretion.[4]

### DISPOSITION

The judgment is affirmed.

_____
CHAVEZ, J.

We concur:

_____
LUI, P. J.

_____
HOFFSTADT, J.

_____

[4]     To the extent defendant's contention is that the trial court ruled that defendant's age of 21 years could never be a mitigating factor in any case, defendant would essentially be arguing that the ruling is ambiguous.  If so, defendant was required to seek clarification in the trial court.  As he did not, the claim may not be raised for the first time on appeal.  (See *People v. Scott* (1994) 9 Cal.4th 331, 351, 353.)